UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE, <br> Plaintiff, <br> v. <br> ANTHEM BLUE CROSS OF CALIFORNIA; ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY <br> Defendants. | No. 1:24-CV-02941 <br><br> Judge Edmond E. Chang |

MEMORANDUM OPINION AND ORDER

Northwestern Memorial Healthcare provided medical treatment to nine patients who were insured by Anthem Blue Cross of California. R. 22, Sec. Am. Compl. ¶ 10.[1] After providing the treatment, Northwestern billed Anthem around $550,000. *Id.* ¶¶ 15–16. But Anthem did not pay this full amount, instead paying Northwestern roughly $258,000 across the nine claims. *Id.* ¶ 17.

So Northwestern sued Anthem, claiming that Anthem breached its implied contract with Northwestern and unjustly benefitted from Northwestern's actions.[2] Sec. Am. Compl. Anthem now moves to dismiss, contending that Northwestern has failed to state a claim for relief. R. 23, Defs.' Mot. The motion to dismiss is granted in part and dismissed in part. The Employee Retirement Security Act of 1974 (ERISA),

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has diversity jurisdiction over this case, 28 U.S.C. § 1332(a), because the Plaintiff is an Illinois citizen, the Defendants are both California citizens, and the amount in controversy is more than $75,000. Sec. Am. Compl. at 2–3.

29 U.S.C. § 1001 *et seq.*, does not preempt Northwestern's state law claims, there is no written contract directly between the parties, and Northwestern conferred several benefits upon Anthem. So Northwestern's *quantum meruit* claim survives the motion to dismiss. But because Northwestern already had a preexisting contractual duty to treat Anthem's patients, Northwestern's implied contract claim is dismissed.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). From April 2018 to February 2022, Northwestern Memorial Healthcare provided medical treatment to a group of nine patients who were all insured by Anthem Blue Cross of California. Sec. Am. Compl. ¶¶ 10–11. Northwestern charged Anthem around $550,000 for these patients' care. *Id.* ¶¶ 15–16. Before Northwestern provided the treatment, it sought pre-authorization from Anthem for the care, confirming with Anthem that the care was medically necessary and covered under the patients' insurance plans. Anthem pre-authorized all nine of the treatment claims. *Id.* ¶ 12. So Northwestern provided the medical care—but despite the pre-authorization, Anthem did not pay the full amount that it was charged. *Id.* ¶ 17. Instead, Anthem denied seven of the nine claims and paid Northwestern roughly $258,000 in total. *Id.* After accounting for the discount that Anthem receives on care from Northwestern, Northwestern alleges that it was underpaid around $183,000. R. 22-1, Sec. Am. Compl., Exh A.

2

So Northwestern brought this suit against Anthem. Specifically, Northwestern brings two claims: First, it alleges that Anthem breached an implied contract with Northwestern by refusing to pay the full amount of the claims. Second, Northwestern brings a *quantum meruit* claim, asserting that Anthem unjustly benefitted by receiving unpaid medical care for its customers. Sec. Am. Compl. Anthem now moves to dismiss the Complaint, contending that Northwestern has failed to state a claim for relief. Defs.' Mot.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police*

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. ERISA Preemption

As a threshold matter, Anthem argues that Northwestern's state law claims are preempted by ERISA and thus should be dismissed. R. 24, Defs.' Br. at 12–13. But that argument fails; ERISA does not preempt Northwestern's implied contract and *quantum meruit* claims.

ERISA expressly preempts any state law claims that "relate to any employee benefit plan" that is governed by ERISA. 29 U.S.C. § 1144(a). A state law claim "relates to" an ERISA plan "if the claim requires the court to interpret or apply the terms of" that plan. *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998). Here, the Court must first determine whether Northwestern's nine insurance claims were governed by ERISA plans. If so, then the Court must next determine whether deciding the implied contract and *quantum meruit* claims would require the Court to examine and interpret the terms of the ERISA plans. *See id.*; *Segerberg v. Pipe Fitters' Welfare Fund, Loc. 597*, 918 F. Supp. 2d 780, 784 (N.D. Ill. 2013).

4

Northwestern does not dispute that the nine claims were all governed by ERISA plans. R. 28, Pl.'s Resp. Br. at 12–16. So the only question is whether Northwestern's state law claims would require the Court to *interpret* the terms of the health insurance plans. Anthem argues that the Court would have to interpret the ERISA plans' terms to decide whether the care provided was covered by the plans, and thus whether Anthem was obligated to pay for the billed charges. Defs.' Br. at 13–15. But that argument misses the mark. Before it treated the nine Anthem patients, Northwestern sought pre-authorization from Anthem for all of the planned care. Sec. Am. Compl. ¶ 12. And Anthem provided that authorization, thereby confirming that all of the expected treatment was medically necessary and covered by the patients' Anthem health insurance plans. *Id.* That means that there is no remaining question about whether the provided treatment was within the scope of the patients' insurance plans. That question has already been answered by the parties' conduct—at least as alleged by Northwestern and as the premise of its specific claims. Thus, there is no need for the Court to independently dig into the Anthem plans' terms to make a determination about treatment coverage. So deciding Northwestern's state-law claims would not require interpretation or application of the terms of the ERISA plans.

Anthem cites to *Northwestern Memorial Healthcare v. Anthem Blue Cross and Blue Shield*, 2025 WL 1455823 (N.D. Ill. May 21, 2025), and argues that that decision shows that Northwestern's state law claims here trigger ERISA conflict preemption. Though that opinion did conclude that ERISA preemption applied, it does not change the outcome here. In *Northwestern Memorial*, like in this case, Northwestern sued

5

Anthem for failing to pay the full billed amount of patients' insurance claims. *Id.* at *2. The court reasoned that in order to determine liability and damages on Northwestern's claims, it would have to decide whether the care that Northwestern provided was medically necessary. *Id.* at *4. And the court explained that to determine medical necessity, it would have to interpret the patients' ERISA plans, thereby triggering conflict preemption. *Id.* But the court there did *not* address whether Anthem's *pre-authorization* of the patients' care would eliminate the need to dig into the ERISA plans given the state law claims advanced by Northwestern here. *See id.* at *4–*5. Thus, the decision does not undermine or conflict with this Court's rationale that pre-authorization resolves the medical-necessity question and removes the need to examine the ERISA plan terms. ERISA thus does not preempt Northwestern's state law claims.[4]

### B. Implied Contract

Moving on to the claims themselves, Anthem asserts that Northwestern's implied contract claim fails because Northwestern did not provide consideration for the alleged implied contract. Defs.' Br. at 6–7. That is correct, and it is fatal to Northwestern's first claim.

"[V]alid consideration, on the part of *both parties*, is one of the essential requirements for the formation of a contract." *Marque Medicos Fullerton, LLC v. Zurich*

---

[4]Fact discovery may reveal that Anthem did not in fact pre-authorize the care that Northwestern provided, or that there is at least a genuine dispute over the pre-authorization, thus requiring a factual resolution. If it turns out that Anthem did not provide pre-authorization, then Anthem may re-raise its argument on ERISA preemption.

*Am. Ins. Co.*, 83 N.E. 3d 1027, 1044 (Ill. App. 2017). But "consideration cannot flow from an act performed pursuant to preexisting legal duty." *Id.* In other words, if a party is already legally obligated to take an action, that action cannot serve as valid consideration for a contract.

Here, Northwestern claims that its treatment of the Anthem patients was the consideration it provided for the contract with Anthem. Pl.'s Resp. Br. at 7. But Northwestern already had a preexisting legal duty to treat the Anthem patients. As Northwestern itself alleges, it had previously entered into a contract with Blue Cross Blue Shield of Illinois that "obligated [Northwestern] to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the national Blue Cross Blue Shield Association, of which Anthem is one such member." Sec. Am. Compl. ¶ 25. So put simply, Northwestern's contract with Blue Cross Blue Shield required Northwestern to treat Anthem patients, independent of any contract that Northwestern later formed with Anthem. Northwestern thus had a preexisting legal duty to treat the nine Anthem patients. Thus, the treatment that Northwestern provided could not serve as valid consideration for a contract with Anthem. And because there is no valid consideration, Northwestern fails to properly state an implied contract claim. *See Marque Medicos Fullerton,* 83 N.E. 3d at 1044. Anthem's motion to dismiss is granted as to the implied contract claim.

### C. *Quantum Meruit*

Finally, on Northwestern's clam for *quantum meruit*, Anthem argues that Northwestern fails to state a claim because (1) there is a written contract that deals

7

with the same subject matter as the claim and (2) Northwestern does not allege that it conferred a benefit directly on Anthem. Defs.' Br. at 10–11. Neither of these arguments carries the day.

First, Anthem is correct that there is a written contract that deals with the treatment of Anthem patients. As explained above, Northwestern did enter into a written contract with Blue Cross Blue Shield, obligating Northwestern to treat Anthem patients. Sec. Am. Compl. ¶ 25. But that written contract is not between Northwestern and *Anthem*; it is between Northwestern and Blue Cross Blue Shield. *Id.* Thus, the contract does not undermine Northwestern's *quantum meruit* claim. *See Keck Garrett & Assocs. v. Nextel Commc'ns*, 517 F.3d 476, 487 (7th Cir. 2008).

In support of its argument that Northwestern's claim fails due to the Blue Cross Blue Shield contract, Anthem cites *Keck Garrett & Associates v. Nextel Communications*, 517 F.3d 476 (7th Cir. 2008). Defs.' Br. at 10. In *Keck Garrett*, the court concluded that "Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue." *Keck Garrett,* 517 F.3d at 487. But again, there is no contract between Northwestern and *Anthem* that governs their relationship with each other. Instead, there is only a contract between Northwestern and Blue Cross Blue Shield that discusses Northwestern's obligations to Anthem. Sec. Am. Compl. ¶ 25. That is not enough to knock out the *quantum meruit* claim. In *Keck Garrett*, the written contract governing relations between the parties was between the parties themselves. To defeat Northwestern's *quantum meruit* claim, the same would have to be true here. *Keck Garrett*, 517 F.3d

8

at 487. But it is not. There is no written contract specifically between Anthem and Northwestern governing their relationship.

Second, Anthem argues that the *quantum meruit* claim fails because Northwestern does not allege any direct benefit conferred upon Anthem. Defs.' Br. at 11. Instead, Anthem claims that by treating the patients, Northwestern conferred benefits only on the patients themselves, not on Anthem as the insurer. *Id.* But that argument ignores the contents of Northwestern's Complaint. Anthem is right that a plaintiff bringing a quasi-contract claim must plausibly allege that it conferred a benefit on the defendant. *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 852 (N.D. Ill. 2006). But Anthem is wrong in saying that Northwestern failed to make such allegations.

In its Complaint, Northwestern alleges that it directly conferred several benefits on Anthem. Northwestern says that by treating Anthem's patients, Northwestern (1) helped Anthem gain cost savings, (2) provided better customer satisfaction to Anthem, (3) allowed Anthem to increase its market share, and (4) gave Anthem the ability to retain the premiums that its customers paid. Sec. Am. Compl. ¶ 22. These are all benefits that Northwestern conferred on Anthem, not on the patients. So Northwestern has properly alleged a claim for *quantum meruit*, and that claim survives the motion to dismiss.

### IV. Conclusion

Anthem's motion to dismiss, R. 23, is granted in part and denied in part. The motion to dismiss is granted as to Northwestern's implied contract claim. But the

motion is denied as to the *quantum meruit* claim, so discovery may commence on that claim.

ENTERED:

s/Edmond E. Chang  
Honorable Edmond E. Chang  
United States District Judge

DATE: August 11, 2025